IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No. 19-10048-01-JWB
                                                 (Civ. Case No. 20-1309-JWB)

MARIA ALONSO-ESPINOZA,

    Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to vacate or correct sentence under 28 U.S.C. 2255. (Doc. 41.) The government has filed a response. (Doc. 48.) After the government responded, the court appointed attorney Paul S. McCausland to represent Defendant, and the court subsequently held two status hearings with counsel concerning the motion. The court is now prepared to rule. For the reasons stated herein, Defendant's motion to vacate sentence is DENIED IN PART and GRANTED IN PART.

**I. Background**

On February 26, 2019, Defendant was arrested following a traffic stop on Interstate 70 in Russell County, Kansas. In the course of the stop, a Kansas Highway Patrol Trooper found approximately twenty-one pounds of suspected methamphetamine in the vehicle in which Defendant was traveling with another individual. (Doc. 1.) On March 6, 2019, Defendant was charged in a one-count indictment with unlawful possession with intent to distribute 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2. (Doc. 8.)

An assistant federal public defender was initially appointed to represent Defendant but withdrew because of a conflict of interest. (Doc. 13.) On April 5, 2019, attorney Sylvia B. Penner of the District of Kansas Criminal Justice Act (CJA) Panel was appointed as substitute counsel. (Doc. 14.) Two continuances were subsequently granted by the court at Defendant's request. (Docs. 15, 18.) On July 16, 2019, Defendant submitted a request for a new attorney, complaining about a lack of communication regarding her case, but withdrew the request when the court held a hearing on it. (Docs. 20, 22.) The case was scheduled for trial on October 1, 2019, but on September 24, 2019, Defendant notified the court of her intent to change her plea. (Doc. 27.)

Defendant appeared for a Rule 11 hearing on November 4, 2019. She was represented by Ms. Penner and aided by a Spanish interpreter.[1] The court personally addressed Defendant at the hearing and examined her under oath to ascertain, among other things, whether she was competent to enter a plea of guilty, whether she understood her right to plead not guilty and have a jury trial, whether she understood her right to be represented by counsel, whether she understood the rights attendant to a trial and that she would be waiving those rights if she pled guilty, whether she understood the charges and possible penalties (including a mandatory minimum sentence) for the offense, whether she understood the operation and effect of the sentencing guidelines, whether she understood the terms of her plea agreement with the government, and whether she understood the waiver of a right to appeal in her plea agreement. Defendant represented to the court that she understood all of these matters. (*See* Doc. 32.) After reviewing these and other matters, Defendant entered a plea of guilty to the charge in the indictment. Defendant also executed a Petition to Enter a Plea of Guilty in which she represented that she understood the foregoing matters. (Doc. 30.)

---

[1] Defendant represented at the Rule 11 hearing that although she can speak and read English and Spanish, the use of a Spanish interpreter would be helpful in understanding the proceedings. (Doc. 32 at 3, 7.) The Presentence Report (PSR) also indicates Defendant advised a probation officer that she speaks, reads, and writes Spanish and English. (Doc. 34 at 14.)

Defendant also executed a plea agreement in which she admitted the factual basis for the offense and agreed to enter a plea of guilty to the charge in the indictment in exchange for certain promises from the government. (Doc. 31.) The court accepted Defendant's guilty plea after determining that there was a factual basis for it and that Defendant entered the plea freely and voluntarily and with a full understanding of its consequences. (*Id.* at 26.)

Sentencing was held on January 27, 2020. (Doc. 35.) The Presentence Report (PSR) determined that Defendant's guideline range for imprisonment was 121 to 151 months, but the court concluded Defendant qualified for a "safety valve" reduction under U.S.S.G. § 5C1.2, making the applicable guideline range 97 to 121 months. (Doc. 47 at 11.) The court ultimately imposed a sentence of 85 months' imprisonment, to be followed by a five-year term of supervised release, and a $100 special assessment. (Doc. 36.) Judgment was entered on January 29, 2020. (*Id.*)

On November 5, 2020, Defendant filed the instant motion to vacate sentence under 28 U.S.C. § 2255. (Doc. 41.) In Ground One, the motion alleges that "almost immediately after" sentencing, Defendant's sister contacted Ms. Penner and stated that Defendant wanted to file an appeal, but Penner failed to do so. (*Id.* at 4.) In Ground Two, it alleges that Penner failed to communicate with Defendant and keep her informed about the case, leaving Defendant "completely uninformed throughout all the proceedings" and "unsure about everything." (*Id.* at 5.) Defendant contends she would have asked for a new attorney but "did not know how to ask" for one. (*Id.* at 6.)

## II. Standards

Section 2255(a) of Title 28 of the U.S. Code provides in part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon

3

the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence." Unless the motion and the record of the case conclusively show the prisoner is entitled to no relief, the court must promptly grant a hearing. 28 U.S.C. § 2255(b). However, if it plainly appears from the motion, any attached exhibits, and the record that the moving party is not entitled to relief, the judge must dismiss the motion. Rule 4(b), Rules Governing Section 2255 Proceedings. *See United States v. Santiago*, No. 19-10055-JWB, 2021 WL 663201, at *3 (D. Kan. Feb. 19, 2021).

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (citation omitted.) "To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To establish prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When a defendant alleges that her attorney's deficient performance led her to accept a guilty plea rather than go to trial, a defendant "can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial.'" *Lee*, 137 S. Ct. at 1965 (citation omitted.) *See Santiago*, 2021 WL 663201, at *3.

### III. Analysis

A. <u>Failure to communicate</u>. Defendant's allegations that her attorney failed to communicate with her about the case are entirely conclusory and fail to demonstrate any entitlement to relief. The motion does not identify any particular aspect of the case or the proceedings about which Defendant was uninformed. *See United States v. Creighton,* 786 F. App'x 743, 748-49 (10th Cir. 2019) (allegation that there "was not any reasonable communication" was conclusory and unsupported.) Moreover, these vague allegations are directly contrary to Defendant's numerous representations throughout the case. When Defendant withdrew her request for a new attorney on July 30, 2019, she represented under oath that she wanted Ms. Penner to remain as her lawyer. Defendant stated she was previously confused but had talked with Penner and they had good communication and Penner was doing a good job of representing her. (Doc. 45 at 5-6.) At the Rule 11 hearing, when the court reviewed the case with Defendant and explained her rights, Defendant represented under oath (among other things) that she was able to think clearly (*id.* at 7); that she and her lawyer had had enough time to discuss the charge and the proposed plea and carefully review everything in the petition and plea agreement (*id.* at 11); that all of those documents were either read by Defendant or read to her in Spanish (*id.* at 12); that she and her lawyer had time to review and discuss all of the documents produced by the government and had discussed in detail the advantages and disadvantages of pleading guilty instead of going to trial (*id.*); that she understood she could refuse to enter a plea agreement and could insist on going to trial (*id.*); and that she was completely satisfied with her lawyer's legal advice and representation. (*Id.*) Defendant also specifically admitted the factual basis stated by the government at the hearing, including that she had picked up the methamphetamine and was transporting it to Wichita for distribution. (*Id.* at 23.) Defendant represented that she understood the decision to plead guilty

5

was hers alone and that her lawyer had not indicated in any way that she must plead guilty, and that her lawyer made it clear she would defend her to the best of her ability if she went to trial. (*Id.* at 24.)  Defendant also represented that she was pleading guilty freely and voluntarily and had no questions for the court or her lawyer about her case. (*Id.* at 25.)  At the sentencing hearing on January 27, 2020, Defendant similarly represented under oath that she had had an opportunity to review the PSR and go over it with her attorney and was satisfied with her attorney's representation. (Doc. 47 at 4.)  Defendant also now complains "there was a language barrier" between her and counsel, but that too is unexplained and is contrary to the record showing that Defendant generally understands both Spanish and English.  Defendant also now claims she "did not know who or how to ask for a new attorney," but that allegation too is contradicted by the record, which shows that early in the case she wrote a letter to the court asking for a new attorney, but then withdrew the request when the court held a hearing on it. (Docs. 20, 45.)

In light of the clear and specific representations made by Defendant under oath, her vague allegations that her attorney did not adequately communicate with her do not show an entitlement to relief.  *See United States v. Saucedo-Avalos*, No. 14-20071-02-JAR, 2018 WL 2321952, *6 (D. Kan. May 22, 2018) ("Absent a believable reason justifying departure from their apparent truth, the accuracy and truth of a defendant's statements at a Rule 11 proceeding at which his plea is accepted are conclusively established.") (citing *United States v. Glass*, 66 F. App'x 808, 810 (10th Cir. 2003)).  The allegations in the petition fail to show that counsel's representation fell below an objective standard of reasonableness and fail to show that Defendant suffered any prejudice as the result of any deficiency in communication. Insofar as the motion alleges ineffective assistance of counsel based on a lack of communication, the record shows Defendant is not entitled to relief and that such allegations should be dismissed.

B. <u>Failure to file notice of appeal</u>. Defendant alleges that after sentencing, her sister "explain[ed] my desire to file an appeal" to Ms. Penner but Penner indicated she would have to find another lawyer and failed to file an appeal. (Doc. 41 at 4.)

Counsel has a constitutional duty to consult with a defendant about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that [she] was interested in appealing." *Roe v. Flores*, 528 U.S. 470, 480 (2000). When an attorney has consulted with a defendant about filing an appeal – meaning the attorney has advised the defendant about the advantages and disadvantages of an appeal and made a reasonable effort to discover the defendant's wishes – counsel performs in a professionally unreasonable manner "only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* at 478. Thus, a lawyer "who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477.

Defendant's allegations concerning the filing of an appeal are somewhat vague. They do not state whether Penner consulted with Defendant about filing an appeal or what express instructions Defendant gave Penner. They merely indicate that sometime after sentencing, Defendant's sister "explained" to Penner something about Defendant's "desire" to file an appeal. (Doc. 41 at 4.) It is not clear what message was in fact conveyed. Nevertheless, the allegations leave open the possibility of relief under *Flores* if Defendant were to present evidence showing that her attorney failed to properly consult with her or disregarded express instructions from her to file an appeal. *Cf. United States v. Kelley,* 318 F. App'x 682, 688 (10th Cir. 2009) (finding defendant reasonably demonstrated his interest in filing an appeal).

7

In response to these allegations, the government asserts there is uncertainty about the substance of the alleged conversation and, based on that uncertainty, it concedes the motion should be granted and judgment should be reinstated to allow Defendant to file an appeal. (Doc. 48 at 9-10.) The government reiterated this position at a recent status conference, indicating that evidentiary difficulties would likely make a hearing unproductive and a waste of time and resources. It contends, and defense counsel agreed, that the court can and should vacate and reinstate the judgment to allow an appeal without conducting a hearing and without making findings about the substance of the alleged conversation and whether counsel's actions constituted ineffective assistance.

Based on the government's concession, the court will assume without deciding that Defendant's claim is true and will vacate and reinstate the judgment to permit Defendant to file an appeal. *See United States v. Sandoval-Lopez*, 409 F.3d 1193, 1198 (9th Cir. 2005) ("if the [government] does not object, the district court can vacate and reenter the judgment without a hearing and allow the appeal to proceed, assuming without deciding that the petitioner's claim is true.") *Cf. Castro v. United States*, 540 U.S. 375, 386 (2003) ("[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.") (Scalia, J., concurring in part and concurring in the judgment).

### IV. Conclusion

Defendant's motion to vacate or correct sentence under 28 U.S.C. § 2255 (Doc. 41) is DENIED IN PART and GRANTED IN PART. The motion is DENIED insofar as it alleges (in Ground Two) that defense counsel provided ineffective assistance by failing to communicate with Defendant about her case. The motion is GRANTED (as to Ground One) insofar as Defendant

seeks relief consisting of an order vacating and reinstating the judgment, thereby allowing Defendant to file a notice of appeal of the judgment.  The court hereby VACATES and REINSTATES the judgment of conviction and sentence previously imposed in this case (Doc. 36) to enable Defendant to file a notice of appeal.  Pursuant to Fed. R. App. P. 4(b), Defendant has 14 days from reinstatement of the judgment to file a notice of appeal.

   IT IS SO ORDERED this 7th day of June, 2021.


              _____s/ John W. Broomes_____
              JOHN W. BROOMES
              UNITED STATES DISTRICT JUDGE